UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RYAN HENGESBACH,

       Plaintiff,                                      Hon. Paul L. Maloney

v.                                                      Case No. 1:08-CV-355

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 27 years of age at the time of the ALJ's decision. (Tr. 23). He successfully completed high school and worked previously as an assembler, cook, and stocker. (Tr. 71, 100-05, 414-15).

Plaintiff applied for benefits on August 24, 2004, alleging that he had been disabled since March 29, 2003, due to epilepsy, asthma, a learning disability, and depression. (Tr. 21, 78). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 32-69). On July 31, 2007, Plaintiff appeared before ALJ Thomas English, with testimony being offered by Plaintiff and vocational expert, Chandra Donnell. (Tr. 407-34). In a written decision dated August 31, 2007, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 21-31). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-7). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2004. (Tr. 21). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must

establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

On June 25, 2003, Plaintiff was examined by Dr. Glen Ackerman. (Tr. 145-46). Plaintiff reported that he had not suffered a seizure since 1999. (Tr. 146). The doctor diagnosed Plaintiff with a "seizure disorder" and "depression and anxiety." (Tr. 145-46). Plaintiff's anti-seizure medication was continued. (Tr. 146). Plaintiff began taking Zoloft the following month. (Tr. 144).

Plaintiff suffered two seizures on November 24, 2003. (Tr. 144). Dr. Ackerman attributed these seizures to "heavy alcohol consumption (8 to 10 beers), a lack of sleep, possible dehydration, and questionable compliance with his [anti-seizure medication]." (Tr. 144).

On June 15, 2004, Plaintiff was examined by Dr. Ackerman. (Tr. 141). Plaintiff reported that he had not suffered any seizures since November 2003. (Tr. 141). Plaintiff reported that he was still experiencing depression. (Tr. 141). The doctor observed that "a switch from Zoloft to Paxil may be helpful." (Tr. 141).

On June 28, 2004, Plaintiff participated in a consultive examination conducted by J. Keith Ostien, Ph.D. (Tr. 308-11). Plaintiff reported that he could not work because of his seizure disorder. (Tr. 308). Plaintiff denied drug or alcohol abuse, but acknowledged that he uses alcohol "to relax." (Tr. 309). Plaintiff reported that his daily activities consist of sleeping late, eating, watching television, and playing video games. (Tr. 309). Plaintiff participated in intelligence testing, the results of which revealed that he possesses a verbal IQ of 83, a performance IQ of 84,

and a full-scale IQ of 83. (Tr. 309). Additional testing revealed that Plaintiff possesses "low normal academic skills in reading and spelling, and diminished skills in arithmetic." (Tr. 310). The results of a mental status examination were unremarkable, but Dr. Ostien observed that Plaintiff "sought to present himself as very depressed, dysfunctional, and impaired." (Tr. 310). Plaintiff was diagnosed with dysthymic disorder and dependent personality disorder with avoidant features. (Tr. 310). Plaintiff's GAF score was rated as 57. (Tr. 311). Dr. Ostien observed that Plaintiff "needs to be involved in outpatient psychotherapy." (Tr. 311).

On September 7, 2004, Plaintiff completed a report concerning his activities. (Tr. 92-99). Plaintiff reported that he shops, prepares his own meals, visits his parents, talks with friends on the telephone, and visits the library "to use [the] computer." (Tr. 94-96). Plaintiff reported that he also watches television and plays video games. (Tr. 93).

On October 11, 2004, Plaintiff participated in a consultive examination conducted by Dr. Ostien. (Tr. 164-68). Plaintiff reported that his daily activities consist of "watching television, playing videogames, and smoking cigars." (Tr. 166). Plaintiff participated in intelligence testing, the results of which revealed that he possesses a verbal IQ of 80, a performance IQ of 81, and a full-scale IQ of 80. (Tr. 165). Additional testing revealed that Plaintiff possesses "low normal academic skills in reading and spelling, and borderline skills in arithmetic." (Tr. 166). The results of a mental status examination were unremarkable, but Dr. Ostien observed that Plaintiff "sought to present himself as very depressed, dysfunctional and impaired." (Tr. 166-67). Plaintiff was diagnosed with dysthymic disorder and dependent personality disorder with avoidant features. (Tr. 167). Plaintiff's GAF score was rated as 57. (Tr. 168). Dr. Ostien observed that Plaintiff "needs to be involved in outpatient psychotherapy." (Tr. 168).

On October 12, 2004, Plaintiff participated in a CT examination of his brain, the results of which revealed no evidence of acute intracranial process. (Tr. 217).

On September 19, 2005, Plaintiff reported that "his depression is doing better on Paxil." (Tr. 369). Plaintiff also reported that his seizure disorder was controlled. (Tr. 369).

On October 4, 2005, Plaintiff participated in a consultive examination conducted by Dr. Ostien. (Tr. 312-15). Plaintiff reported that he participated in outpatient psychological therapy "when he was younger," but "has not received any type of mental health treatment in a number of years." (Tr. 313). Plaintiff reported that he was "depressed all of the time." (Tr. 313). Plaintiff also reported that he experiences "sudden and unexpected explosive outbursts coupled with physical aggressiveness and violence." (Tr. 313). Plaintiff reported that his daily activities consist of playing poker and pool on-line and reading about sports. (Tr. 313). Plaintiff exhibited "evidence of increased agitated depression, increased feelings of worthlessness, and extremely negative self-esteem," but the results of a mental status examination were otherwise unremarkable. (Tr. 313-14). Plaintiff was diagnosed with (1) major depressive disorder, recurrent; (2) intermittent explosive disorder; (3) rule out cognitive disorder, secondary to longtime epilepsy; and (4) dependent personality disorder, with avoidant features. (Tr. 314). Plaintiff's GAF score was rated as 50. (Tr. 315).

On September 12, 2006, Dr. Ackerman reported that Plaintiff's seizure disorder was "stable" with medication. (Tr. 367). On September 16, 2006, Dr. Ackerman completed a report concerning Plaintiff's ability to perform work activities. (Tr. 332-33). The doctor reported that Plaintiff's seizure disorder was "stable" and "controlled." (Tr. 332-33). Dr. Ackerman reported that Plaintiff can frequently lift 50 pounds. (Tr. 333). The doctor reported that during an 8-hour

workday, Plaintiff can sit and stand/walk for six hours each. (Tr. 333). The doctor reported that Plaintiff can perform repetitive grasping, reaching, pushing, pulling, and manipulation activities with both of his upper extremities. (Tr. 333). Finally, Dr. Ackerman reported that Plaintiff experienced no mental limitations. (Tr. 333).

On October 4, 2006, Plaintiff participated in a consultive examination conducted by Dr. Ostien. (Tr. 317-20). Plaintiff reported that he was unable to work because is asthma is "real bad." (Tr. 318). Plaintiff reported that he continued to experience depression, but acknowledged that he has "not pursued any psychological treatment." (Tr. 318). Plaintiff was administered psychological testing, the results of which indicated "severe levels of depression." (Tr. 318). The results of a mental status examination were otherwise unremarkable. (Tr. 319). Plaintiff was diagnosed with (1) major depressive disorder, recurrent; (2) intermittent explosive disorder; and (3) dependent personality disorder, with avoidant features. (Tr. 319). Plaintiff's GAF score was rated as 50. (Tr. 319).

On October 14, 2006, Plaintiff completed a report concerning his daily activities. (Tr. 351-54). Plaintiff reported that he prepares his own meals, shops, drives, reads the newspaper, watches television, visits his parents, and plays video games. (Tr. 351-53).

On April 25, 2007, Plaintiff began treating with Dr. Leslile MacAuley. (Tr. 383-89). Plaintiff reported that he was experiencing "severe depression and bad anger problems." (Tr. 383). Plaintiff reported that he spends his time on the internet and watching television. (Tr. 384). Plaintiff was diagnosed with dysthymic disorder and his GAF score was rated as 55. (Tr. 384).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) affective disorder, (2) dysthymia, and (3) asthma. (Tr. 23). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 25). The ALJ concluded that while Plaintiff was unable to

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 25-31). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff is capable of performing work activities, subject to the following limitations: (1) he can lift or carry 20 pounds occasionally and 10 pounds frequently, (2) he must be able to sit or stand at will, (3) he cannot engage in repetitive bending, twisting, or turning activities, (4) he cannot climb, crawl, squat, or kneel, (5) he requires a clean air environment, (6) he is limited to the performance of simple jobs with only one, two, or three step instructions, and (7) he can engage in only superficial contact

with the public. (Tr. 25-26). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Chandra Donnell.

The vocational expert testified that there existed approximately 15,900 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 430-32). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

As indicated above, Dr. Ostein examined Plaintiff on several occasions. Following an October 4, 2005 examination, Dr. Ostein reported Plaintiff's GAF score as 50.[2] (Tr. 315). The doctor again assessed Plaintiff's GAF score as 50 following an October 4, 2006 examination. (Tr. 319). On appeal, Plaintiff asserts a single issue, that the ALJ failed to accord appropriate weight to the GAF scores reported by Dr. Ostein. Plaintiff appears to take the position that Dr. Ostein is to be considered a treating physician whose opinions are entitled to deference. Defendant asserts that because Dr. Ostein only examined Plaintiff as a consultant and never actually treated Plaintiff, he does not qualify as a treating physician.

The Sixth Circuit has held that where a physician performs a single consultive examination and administers no treatment to a claimant, the physician's opinions are entitled to no special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The court further stated that "[t]he treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Id.*

While Dr. Ostein does not appear to have ever treated Plaintiff, the Court notes that he did examine Plaintiff on several occasions over a lengthy period of time. The Court finds that the latter circumstance outweighs the former and that Dr. Ostein's opinions should be evaluated pursuant to the treating physician rule.

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

11

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Id.* Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Nonetheless, the ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

While the Court must generally defer to the medical opinions expressed by a claimant's care providers, *see King*, 742 F.2d at 973, the ALJ is not required "to put stock in a GAF score in the first place." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir., Feb. 9, 2006) (citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002)). As the Sixth Circuit has recognized, a GAF score "may help an ALJ assess mental RFC, but it is not raw medical data." *Kornecky*, 167 Fed. Appx. at 503 n.7. Thus, Plaintiff's claim fails because he has failed to identify any medical opinion to which the ALJ failed to properly defer.

Moreover, Plaintiff's assertion that these GAF scores reveal that he is disabled or impaired to an extent beyond that recognized by the ALJ is not supported by the evidence of record. Dr. Ostein has not opined that Plaintiff is incapable of working, but instead recommended to Plaintiff that he participate in *outpatient* psychotherapy, a recommendation which Plaintiff consistently

disregarded.  To the extent that Dr. Ostein's opinions or comments are based upon Plaintiff's subjective allegations, the Court notes that the ALJ correctly concluded that Plaintiff "has severe problems with his credibility." (Tr. 29).  Plaintiff's longtime treating physician, Dr. Ackerman, concluded that Plaintiff was capable of performing work activities consistent with the ALJ's RFC determination.  Finally, Plaintiff's reported activities are inconsistent with his subjective allegations of pain and limitation.  In sum, the ALJ properly evaluated the medical evidence in this matter and correctly declined to afford less than controlling weight to the opinions expressed by Dr. Ostein.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  March 30, 2009                               /s/ Ellen S. Carmody
                                                    ELLEN S. CARMODY
                                                    United States Magistrate Judge